UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-10226-RGS

JOANNA M. SNYDER and JENNIFER DONAHUE

v.

CONTRACTED MEDICAL FOR THE DOC, et al.

MEMORANDUM AND ORDER

August 7, 2020

For the reasons stated below, this action is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

<u>INTRODUCTION</u>

This prisoner civil rights action was initiated on February 5, 2020, by Joanna M. Snyder ("Snyder") and Jennifer Donahue ("Donahue"), both inmates in custody at MCI Framingham. *See* Docket No. 1. By Memorandum and Order dated March 27, 2020, plaintiffs' applications to proceed *in forma pauperis* were granted and the obligation to make payments towards the $350 filing fee was apportioned between the two plaintiffs. *See* Docket No. 18. At that time, the motion for immediate injunction and temporary restraining order was denied without prejudice and plaintiffs were advised that the complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2),

1915A.  The Memorandum and Order stated, among other things, that the complaint contains conclusory and unrelated allegations and fails to set forth a short and plain statement of single, concise and direct allegations against the named defendants that would permit them to intelligently respond to the complaint.  If plaintiffs wished to proceed, they were granted additional time to file an amended complaint setting forth plausible claims upon which relief may be granted.

In response, plaintiffs filed an amended complaint accompanied by almost 200 pages of exhibits.  *See* Docket Nos. 26-28.  Plaintiffs also filed motions for class certification and for appointment of counsel, which were denied by Order dated July 31, 2020.  *See* Docket No. 38.  At that time, the court denied seven motions for joinder.  *Id.*

## PLAINTIFFS' AMENDED COMPLAINT

Snyder and Donahue allege multiple violations of their constitutional and statutory rights arising out of their confinement at MCI-Framingham. The amended complaint adds over a dozen defendants to the originally identified eight defendants.  In their amended complaint, plaintiffs make allegations related to limited access to the law library; access to the courts; denial of opportunities to earn good time credit; inadequate medical treatment; free exercise of religion; food safety and nutrition; urine

collection procedures; termination from prison employment; denial of access to the grievance process; loss of property; and exposure to COVID-19 (coronavirus).  *Id.*

The amended complaint is 40 pages in length and is accompanied by 193 pages of exhibits.  The "fact" section of the amended complaint consists of 147 separate paragraphs of allegations that primarily reference specific exhibits.  *See* Am. Compl, pages 5- 16.  Plaintiffs' "legal claims" are found in 16  handwritten, single spaced pages.   *Id.* at pages 18-33.

The amended complaint is brought pursuant to 42 U.S.C. § 1983, *id.* at ¶ 1, and plaintiffs allege that the amended complaint "outlines the allegations and violations of the Department of Corrections and Contracted Medical Staff at D.O.C." as follows:

1) Violations of Amendment 1 of the U.S.C.;
2) Violations of Amendment 8 of the U.S.C.;
3) Violations of Amendment 14 of the U.S.C.;
4) Violation of providing adequate medical care w/complaint medical staff;
5) RLUIPA violation;
6) Selective Enforcement;
7) Total Campaign of Harassment;
8) Violation of Equal Protection;
9) Violation of Mass Civil Rights Act;
10) Intentional Infliction of Emotional Distress;
11) Retaliation; and
12) Wreckless (sic) endangerment.

*Id*. at p. 28.   Plaintiffs state that "[a]ll of the acts described herein this complaint are true and constitute the alleged offenses." *Id*.

For relief, plaintiffs seek (1) a "declaration that the acts and omissions described herein violate the Constitution of the United States, the Massachusetts Civil Rights Act, the Code of Mass Regulations, and the Annotated Laws of Massachusetts as described in paragraphs (1 on page 5 through 147 on page 15)" (2) to enjoin "all the defendants" from "aggression and retaliation to all the plaintiffs who are engaging in a constitutionally protected right that is not violating Dept. rules" and (3) an "emergency restraining order to provide adequate safe medical care, to observe bridge orders to be able to properly treat [inmates] for medical diagnosis, to provide the proper diet and nutrition that is outlined by the dietician, and to provide and grant 15 days a month good time as a matter of law." *Id*. at page 34.   Plaintiffs also seek $487.00 in compensatory damages and punitive damages "as the court sees fit." *Id*.

## STANDARD OF REVIEW

Because plaintiffs are prisoners seeking relief against governmental entities, officers, and/or employees, the court must review the amended complaint under 28 U.S.C. § 1915A.  Under § 1915A, the court must review the amended complaint and dismiss if the court determines that it is

frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2).  Because plaintiffs are proceeding *pro se*, the amended complaint will be liberally construed.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Rodi v. New Eng. Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004).  Although plaintiffs are proceeding *pro se*, they must comply with the rules of procedure in prosecuting this action.  *See Miranda v. United States*, 105 F. App'x 280, 281 (1st Cir. 2004).

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain, among other things, "a short and plain statement of the claim" showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This statement must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "[']meaningful opportunity to mount a defense,' " *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004) (quoting *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995)).

The "most basic of pleading requirements" obligates a plaintiff to make more than a fleeting reference to a ground for relief. *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 88 (1st Cir. 2008). "'[I]f claims are merely insinuated rather than actually articulated,' courts are not required to make determinations on them." *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 45 (1st Cir. 2011) (quoting *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 (1st Cir. 1991)).

The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

The district court may dismiss a complaint if the plaintiff fails to comply with Rule 8(a)(2). *See Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1993). Dismissal [for noncompliance with Rule 8] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise

unintelligible that its true substance, if any, is well disguised." *Miranda v. United States*, 105 Fed. Appx. 280, 281 (1st Cir. 2004) (quoting *Salahuddin v. Cuom*o, 861 F.2d 40, 42 (2d Cir. 1988)) (alteration in original) (internal quotation marks omitted).

In reviewing the sufficiency of a complaint, the Court conducts a two-step, context-specific inquiry. *See Garcia-Catalan v. United Sta*tes, 734 F.3d 100, 103 (1st Cir. 2013). First, the court must perform a close reading of the complaint "as a whole" to distinguish the factual allegations from the conclusory legal allegations contained therein. *Id.* The court must accept the factual allegations as true. *Id.* Conclusory legal assertions may be disregarded. *Id.* Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation marks and citation omitted).

"The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 4 (1st Cir. 2011).

## DISCUSSION

1.  The Amended Complaint Fails to Comply with the Basic
    Pleading Requirements of the Federal Rules of Civil Procedure

By Memorandum and Order dated March 27, 2020, plaintiffs were advised, among other things, that their original complaint failed to set forth a short and plain statement of single, concise and direct allegations against the named defendants that would permit them to intelligently respond to the complaint.  Here, plaintiffs' amended complaint again fails meet the basic pleading standards of the Federal Rules of Civil Procedure.

Plaintiffs combine several different causes of action against multiple defendants.  They mix both federal claims and state claims and it is often unclear what legal claims they assert against which defendants, making it difficult for the defendants to file a meaningful response.  While plaintiffs have attempted specify their claims and causes of action, they have not done so sufficiently. In fact, much of the amended complaint consists essentially of an unordered listing of incidents and interactions between inmates and various correctional employees and officials and it difficult to link such list with the alleged constitutional violations.

 The statement of claims contains an extensive listing of occurrences that plaintiffs find objectionable, however, they are not presented "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." as required by Fed. R. Civ. P. 10(b).  *See* Am. Compl, at p. 18-33.  Because numbered paragraphs promote clarity, "each claim founded

on a separate transaction or occurrence ... must be stated in a separate count...." Fed. R. Civ. P. 10(b).

Although the "fact" section of the amended complaint consists separate paragraphs of allegations, they primarily reference specific exhibits, *see* Am. Compl, pages 5- 16, and exhibits are not a substitution for the obligation to plead.  The amended complaint fails to clearly and succinctly set forth as to each defendant what the plaintiffs claim he or she did (or failed to do), where it occurred, when it occurred, and the relief the plaintiffs seek as to each defendant.  Much of the amended complaint fails to clearly identify conduct that may be legally actionable, as opposed to conduct that plaintiffs disagreed with or found to be disrespectful.

Although the court denied plaintiffs' motion for class certification, *see* Docket No. 38, Snyder and Donahue are proceeding jointly in this single case.  However, they have not met the preconditions outlined in Rule 20(a)(1) of the Federal Rules of Civil Procedure for joining together as plaintiffs in this action.  While plaintiffs' claims may implicate common questions of law, they do not arise out of the same transaction, occurrence, or series of transactions or occurrences.  Each plaintiff's claims are personal to each of them and involves distinct sets of facts.  Each plaintiff interacted at different times with some of the various defendants with respect to their

own particular problems.  Each plaintiff did not have contact with every defendant.   The similarities in facts and/or legal issues do not convert their individual claims into claims arising from the same transaction or series of transactions or occurrences.  The amended complaint fails to allege that they participated in the same transaction or series of transactions and that a question of fact is common to both.   The allegations  in the amended complaint do not create the necessary relationship between their claims to allow them to be asserted in a single lawsuit.  Thus, joinder of their claims in a single civil rights action is not appropriate under Rule 20(a)(1).

   2.  Review of the Claims that Can be Discerned

   Although the court recognizes that plaintiffs might state some plausible claims, it is difficult to discern such claims.  The court carefully examined the amended complaint.  To the extent the court can discern certain claims, such claims are not actionable as pled.  As best can be gleaned from the complaint, the court reviews the claims as follows:

   A.  Access to the Courts

   In the amended complaint, plaintiffs allege a number of ways in which the defendants interfere with their access to the courts.  *See* Am. Compl, p. 18; Facts ¶¶ 1, 6, 10.  Plaintiffs' allege that law library hours are inadequate,

that they must choose between law library or general library and that their requests for a storage locker in the law library for their legal materials were denied.   *Id*. at p. 24; Facts ¶¶ 11, 34, 28.   Snyder alleges that her request to add a court clerk to her phone list was denied.    Donahue alleges that she was turned away from the law library by correctional officer Johnson, despite extended hours.

To state a claim that they have been denied access to the courts, an inmate must allege more than a lack of legal research materials or assistance, but must also assert facts that "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).   For a claim of denial of law library access, plaintiffs must first show that the available legal resources, including the law library and other sources of legal information, taken as a whole, were inadequate to meet their need to conduct legal research, *see Bounds v. Smith*, 430 U.S. 817, 832 (1977), and further prove that their legal status was harmed by a deprivation of legal materials.  *See Lewis*, 518 U.S. at 351.  With respect to the element of harm, as best can be gleaned by the allegations in the amended complaint, the plaintiffs have not demonstrated that they suffered any detriment to their litigation as a result.

As plaintiffs have failed to demonstrate that they suffered any harm, the amended complaint fails to state a claim for denial of access to the courts.

B. <u>Medical Care</u>

The amended complaint alleges that Donahue is a deaf, transgender inmate. *See* Am. Compl., p. 27.  Plaintiffs allege that after Donahue's hearing aid broke, she had to make several requests before it was replaced.  *Id.* at Facts ¶¶ 8, 40, Ex. GG.  Plaintiffs allege that upon Donahue's arrival at MCI-Framingham, Dr. Gaffur and her subordinates "removed her bridge orders, tweeked her medications that has resulted in an overwhelming amount of seizures, and housed her in H.S.U. (hospital services unit) [for monitoring]." *Id.* at p. 27.   Plaintiffs further allege that the medical providers ignored Donahue's medical condition causing her to suffer seizures and that she suffered a grand mal seizure while alone in a cell without observation.  *Id.* at p. 28.  Plaintiffs also allege that Donahue was prescribed Stratters, rather than Ateroll which she had taken for years, and that she filed grievances to be prescribed Ateroll.  I*d.* at ¶16, Ex. O.  Plaintiffs also allege that the nurse distributing medication does not wear identification, *id.* at ¶32,  and that any complaints are met with threats of placement in the HSU, *id.* at  ¶35.

Plaintiffs allege that Snyder has Sjogrens Syndrome and that she has been repeatedly denied a prescription for Gabepentin. *See* Am. Compl, Facts

12

¶¶ 9, 15, 19, 21, 43, 64, 92.  Plaintiffs allege that nurse practitioner Dana R. denied medication for Snyder's severe pain and threatened Synder with placement in the HSU.  *Id.* at  Facts ¶19, Ex. Q.  Plaintiffs allege that Snyder's request for medical wipes was denied, *id.* at Facts ¶36, and that Snyder's requests for a referral for outside medical treatment were denied.  *Id.* at Facts ¶¶ 23, 100.  Plaintiffs again allege that the medical provider does not provide a name and does not wear identification.  *Id.* at Facts ¶31.

In order to set forth an Eighth Amendment violation based on inadequate medical care, a prisoner must show that the defendants' acts or omissions were sufficiently harmful to evidence a "deliberate indifference" to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97. 106 (1976). However, not "every claim by a prisoner that [the prisoner] has not received adequate medical treatment states a violation of the Eighth Amendment, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 105, 106.  An Eighth Amendment claim for inadequate medical care consists of subjective and objective components. *See Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc).  As to the objective prong, the First Circuit noted that it does not "impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." *Id.* (citations omitted).  Demonstrating deliberate

indifference requires allegations supporting a conclusion "that the absence or inadequacy of treatment is intentional" rather than simply inadvertent. *Perry v. Roy*, 782 F.3d 73, 78 (1st Cir. 2015). "The obvious case [of deliberate indifference] would be a denial of needed medical treatment in order to punish the inmate." *Kosilek*, 774 F.3d at 83 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)). "But deliberate indifference may also reside in 'wanton' decisions to deny or delay care where the action is recklessness, 'not in the tort law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge of impending harm, easily preventable.' " *Watson*, 984 F.2d at 540 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991), and *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991)).

Based on the allegations that can be gleaned from the amended complaint, the court does not see a constitutional claim. While plaintiffs are not satisfied with their medical care, it is evident that they are being treated by medical providers and the amended complaint fails to clearly assert a constitutional claim for deliberate indifference to serious medical need.

### C. Religious Land Use and Institutionalized Persons Act (RLUIPA)

Plaintiffs allege that they are adherents of the Asatru faith, which is alleged to be recognized by the Department of Correction. They assert claims under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized

Persons Act (RLUIPA), 42 U.S.C. § 2000cc.  Section 3 of RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … unless the government demonstrates that the imposition of the burden on that person is in furtherance of a compelling government interest, and is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc–1(a).

In the amended complaint, plaintiffs allege a number of ways in which the defendants interfere with their exercise of their faith.   They seek access to religious literature, special diet, religious leaders, communal worship and observation of holidays.  *See* Am. Compl, p. 18; Facts ¶¶ 2, 30.  Specifically, Snyder alleges that on February 20, 2020, she "grieved the Director of Treatment Taylor Mackellan for RLUIPA violations."   *Id.* at Facts ¶ 2 (referencing Exhibit B).   The following day, on February 21, 2020, Snyder "grieved D.O.T. Mackellan about RLUIPA violation.   *Id.* at Facts ¶ 2 (referencing Exhibit X).   Although plaintiffs allege that their requests for religious accommodation were denied, *id.* at p. 18, attached to the amended complaint is a copy of Snyder's four-page letter addressed to defendant MacKellan expressing disappointment that kitchen manager Jose Arroyo provided nothing more with her meal than "juice and cake" for observance

of a religious holiday on May 1, 2020.  *Id.* at Exhibit ABC two, p. 182.  Synder complains that her religion was "disrespected" by the addition of "2 4 oz. apple juice and a 'whole grain cinnamon crumb loaf'" to her meal on May 1, 2020.  *Id.*

Despite the assertions in the amended complaint, it appears that certain religious accommodations were being made and it is unclear exactly how the defendants are alleged to have substantially burdened plaintiffs' Asatru faith.  As best can be gleaned from the pleadings, the allegations in the amended complaint fail to  state a plausible claim that MacKellan and Arroyo acted in violation of RLUIPA and the Constitution.

### D. Collection of Urine Samples

Plaintiffs challenge both the policy for collection of urine samples as well as the related disciplinary policy that requires freezing of inmate accounts and restitution payments. *See* Am. Compl, p. 19-23.  Plaintiffs complain that inmates must strip and are observed by two correctional officers during urine collection and that garments are not returned.  *Id.* at Facts ¶¶ 17, 27, 33.

The urine testing procedures to which plaintiffs are subjected allegedly violated their right to be free from cruel and unusual punishment under the Eighth Amendment.  The urine testing is performed for purposes of detecting

drug use by inmates and requires the provision of a urine sample while naked in the presence of two correctional officers.    Plaintiffs contend that their rights are violated because the sexual orientation of the correctional officers, apparently female, are not known.   The amended complaint does not allege that any officer or employee intended to deliberately harm or cause embarrassment or discomfort to an inmate.   Although plaintiffs complain that restitution payments are often required, there are no allegations that defendants acted out of any motivation other than legitimate penological interests.

To the extent the amended complaint alleges a violation under the Fourth Amendment, a court must balance "the significant and legitimate security interests of the institution against the privacy interests of the inmates," *Bell v. Wolfish*, 441 U.S. 520, 560 (1979), and accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547. Where, as here, the plaintiffs are incarcerated, their privacy interest is diminished.   *See Hudson v. Palmer*, 468 U.S. 517, 525 - 526 (1984).   The allegations in the amended complaint do not rise to the level of a constitutional violation.

E. <u>First Amendment Right to Petition Government</u>

Plaintiffs allege that on April 2, 2020, Snyder's right to file grievances was suspended, in accordance with 103 CMR 491, until June 30, 2020, by Institutional Grievance Officer Cogoli and Superintendent Ladouceur because Snyder filed 20 or more grievances in any 180 consecutive day period. *See* Am. Compl, at Facts ¶ 108, Ex. A, O.

Plaintiffs allege that by imposing the grievance suspension, Synder's First Amendment right to petition the government for redress of grievances was violated.   Inmates retain their First Amendment right to petition, *Hudson v. Palmer*, 468 U.S. 517, 523 (1984); however, "incarceration brings about the necessary ... limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system," ' *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)).  Prisoners' constitutional rights may be restricted by prison regulations or prison officials' actions so long as the restriction is "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The amended complaint fails to adequately plead a constitutional violation.  *See Klein v. Tocci*, No. 09–11248, 2010 WL 2643414, at *3 (D. Mass. July 1, 2010) (holding temporary grievance suspension).

18

F. <u>Loss of Property</u>

Plaintiffs allege that the treasurer withdrew funds ($30) from Snyder's account for purchases that she did not receive. *See* Am. Compl, p 23. Synder complains that mail from her husband was not delivered to her and that she filed a complaint with the United States Postal Service. *Id.* at Facts ¶¶ 13, 28.

Where, as with Snyder's alleged loss of property here, a prisoner alleges that an individual deprived her of property either through negligence or through intentional misconduct (sometimes referred to as a "random, unauthorized act"), the Due Process Clause is only violated if the state does not afford meaningful post-deprivation remedies. *Hudson v. Palmer*, 468 U.S. 517, 532–33 (1984) ("[W]here a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure ... it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.") (internal quotations omitted); *see also Parrat v. Taylor*, 451 U.S. 527, 543 (1981) (affirming dismissal of due process claim where "the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure" related to the receipt of prisoner packages by mail); *Watson v. Caton*, 984 F.2d 537, 541 (1st Cir. 1993) (affirming dismissal of due process claim based on defendant's alleged destruction of "non-allowable" property

that arrived at prison by mail, without providing prisoner notice and an opportunity to mail the property elsewhere).

Here, Snyder may pursue remedies through the prison grievance system for the deprivation of her property and request an adequate remedy or may have an available remedy in state court. *See Davis v. Middlesex Sheriff's Office*, No. 09-ca-11453, 2010 WL 2090338, at *5 (D. Mass. May 20, 2010) (prisoner could seek an adequate remedy for negligence against the Commonwealth in state court in connection with his lost property). Either the prison grievance procedure or a state law claim provides an adequate post-deprivation remedy. As plead, the allegations in the amended complaint fail to state constitutional claim for loss of property.

G. Various Conditions of Confinement

Plaintiffs allege that Synder tested positive after an appointment with defendant Nurse Practitioner Dana, who came to work despite knowing that her husband had symptoms of COVID-19 (coronavirus). *See* Am. Compl, p 25. Plaintiffs further allege that Dana's supervisors instructed her to continue working and failed to protect Synder and other inmates. *Id.* Plaintiffs also allege that on certain occasions, correctional officers failed to wear masks and failed to provide sanitizer. *Id.*

Plaintiffs allege that Synder was terminated from her kitchen job after making complaints about expired food, watered down oatmeal, rodent and cockroach infestation in the prison kitchen. *See* Am. Compl, p 26; Facts ¶¶ 5, 128. Plaintiffs allege that the "sac" lunches provided due to COVID-19 do not meet required nutritional standards. *Id.* at p. 27.

Plaintiffs seem to contend that the nature of these conditions amount to unconstitutional conditions of confinement. To support such a claim, plaintiffs must allege (1) that they suffered a deprivation as a result of confinement that is, "objectively, sufficiently serious" and (2) that the deprivation resulted from conduct by prison officials who possessed a "sufficiently culpable state of mind." *Burrell v. Hampshire County*, 307 F.3d 1, 8 (1st Cir. 2002).

However, the amended complaint, as plead, does not clearly set forth allegations sufficient to state a claim upon which relief may be granted. The Supreme Court has directed that the Constitution " 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337 (1981)).

As to Synder's loss of her kitchen position, "it is clear that unless state laws or regulations are to the contrary, prisoners have no vested property or liberty rights to either obtain or maintain prison jobs." *Dupont v. Saunders*, 800 F.2d 8, 10 (1st Cir.1986). Synder therefore lacks any federal due process claim with respect to the loss of her kitchen position.

ORDER

Based on the foregoing, it is hereby ORDERED

1. The amended complaint is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

2. The clerk shall enter a separate order of dismissal.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE